Mary Blubaugh, MSN, RN Executive Administrator Kansas State Board of Nursing Landon State Office Building 900 W Jackson St., Ste. 1051 Topeka, KS 66612-1230
Dear Ms. Blubaugh:
As Executive Director for the Kansas State Board of Nursing (Nursing Board), you request an opinion concerning K.S.A. 65-1158, the statute governing certified registered nurse anesthetists (CRNA). A CRNA is a registered professional nurse (RPN) who has also been certified by the Nursing Board as an advanced registered nurse practitioner (ARNP) in the nurse anesthetist category.[1]
Your first inquiry is whether a CRNA, pursuant to K.S.A. 65-1158, can issue orders, written and verbal, for medications and diagnostic tests related to the anesthesia/analgesia care of patients if the physician's orders for such care add the phrase "to include pre- and post-op orders." If the answer is yes, you also ask whether the Nurse Practice Act authorizes an RPN and a licensed practical nurse (LPN) to accept or follow orders given by the CRNA.
In response to our request for input, representatives for the Kansas State Nurses Association (KSNA) and the Kansas Association of Nurse Anesthetists (KANA) offered their opinion that K.S.A. 65-1158 authorizes a CRNA to issues orders for all aspects of anesthesia/analgesia care, including pre- and post-operative orders for medication and testing, without an order from a physician. Based upon their response, the first determination is the scope of practice for a CRNA as set forth in K.S.A.65-1158.
1. Can a CRNA, pursuant to K.S.A. 65-1158, issue orders forpreoperative and postoperative medications and diagnostic tests relatedto anesthesia or analgesia care?
K.S.A. 65-1158 provides as follows:
 "(a) Upon the order of a physician or dentist requesting anesthesia or analgesia care, each registered nurse anesthetist shall:
 "(1) Conduct a pre- and post-anesthesia visit and assessment with appropriate documentation;
 "(2) develop a general plan of anesthesia care with the physician or dentist;
 "(3) be authorized to select the method for administration of anesthesia or analgesia;
 "(4) be authorized to select appropriate medications and anesthetic agents;
 "(5) induce and maintain anesthesia or analgesia at the required levels;
 "(6) support life functions during the peri-operative period;
 "(7) recognize and take appropriate action with respect to patient responses during anesthesia;
 "(8) provide professional observation and management of the patient's emergence from anesthesia; and
 "(9) participate in the life support of the patient.
 "(b) Each registered nurse anesthetist may participate in periodic and joint evaluation of services rendered, including but not limited to, chart reviews, case reviews, patient evaluation and outcome of case statistics.
 "(c) A registered nurse anesthetist shall perform duties and functions in an interdependent role as a member of a physician or dentist directed health care team."
The italicized phrase in subsection (a) was added to the statute in 1996.[2] K.S.A. 65-1158 is very clear that a CRNA cannot perform any of the activities listed in subsection (a)(1) through (9) absent an order by a physician or dentist — much less order medications or testing in a preoperative or postoperative environment independent of authority from a physician. Thus, K.S.A. 65-1158 does not authorize a CRNA to issue preoperative and postoperative orders for medications and diagnostic tests related to anesthesia or analgesia care of a patient. The legislative history of this statute supports this conclusion.
The original bill authorized a CRNA to "develop an anesthesia care plan with a physician or dentist . . . which includes orderingappropriate medications and anesthetics for pre-operative,intra-operative and post-operative administration."[3] The italicized language was deleted after a year-long collaboration between the Nursing Board, the Board of Healing Arts, and several professional organizations representing nurses and physicians.[4]
Mr. Joseph Conroy, the representative from the Kansas Association of Nurse Anesthetists, testified that the introductory phrase, "[u]pon the order of a physician or dentist requesting anesthesia or analgesia care," meant CRNAs "cannot provide anesthesia services without a physician order and therefore are not `independent practitioners', nor do [CRNAs] wish to practice medicine."[5] He also testified that the provision authorizing a CRNA to "develop a general plan of anesthesia care with the physician or dentist" governed instances where a physician may not have sufficient training to develop a specific anesthesia plan, but the physician's medical expertise and judgment was needed for patient care.[6]
Dr. James Kindscher from the Kansas State Society of Anesthesiologists and Mr. Jerry Slaughter from the Kansas Medical Society also testified. They stated the 1996 amendments authorized physicians to order anesthetic care for their patients and to participate in the plan of anesthetic care but CRNAs could select the appropriate anesthetic agents and the method of administration within the context of a physician-directed health care team.[7]
The conclusion that CRNAs cannot order medication and diagnostic testing related to anesthesia or analgesia care is also supported by the advanced registered nurse practitioner statute, K.S.A. 65-1130. This statute authorizes ARNPs to prescribe drugs under certain conditions but disallows such activity for CRNAs.[8]
2. Can a physician delegate to a CRNA the authority to orderpreoperative and postoperative medications and diagnostic tests relatedto anesthesia or analgesia care?
Pursuant to subsection (a) of K.S.A. 65-1158, CRNAs are authorized to provide certain anesthesia or analgesia care only upon the order of physician, and under subsection (c), CRNAs "shall perform duties and functions in an interdependent role as a member of physician or dentistdirected health care team."[9] Neither provision specifically authorizes a physician to delegate to a CRNA the ability to order preoperative and postoperative medications and diagnostic tests related to anesthesia or analgesia care. Accordingly, the statutes governing physicians, the Healing Arts Act, K.S.A. 65-2801 et seq. must be reviewed.
Prescribing medications and ordering diagnostic tests constitutes the practice of the healing arts.[10] It is unlawful to practice the healing arts unless one is licensed to do so.[11] However, the practice of the healing arts does not include the following persons:
 "(g) Persons whose professional services are performed under the supervision or by order of or referral from a [physician];
 . . . .
 "(m) Nurses practicing their profession when licensed and practicing under and in accordance with the provisions of article 11 of chapter 65 of the Kansas Statutes Annotated, or amendments thereto, and any interpretation thereof by the supreme court of this state."[12]
Subsection (m), recognizes that the practice of nursing can encompass acts that constitute the practice of the healing arts. However, as discussed above, K.S.A. 65-1130 and K.S.A. 65-1158 do not authorize a CRNA to issue orders for medication or diagnostic testing. Accordingly, subsection (m) does not allow a CRNA to issue such orders.
As subsection (m) does not apply, the next determination is whether subsection (g) applies. Subsection (g) appears to allow a person to practice the healing arts if acting pursuant to a physician's order or if the physician delegates the activity to the person. However, K.S.A. 2007 Supp. 65-28,127 places certain strictures on a physician ordering others to engage in activities constituting the practice of the healing arts.
K.S.A. 2007 Supp. 65-28,127, in part:
 "(a) Every responsible [physician] who directs, supervises, orders, refers, accepts responsibility for, enters into practice protocols with, or who delegates acts which constitute the practice of the healing arts to other persons shall:
 . . . .
 "(3) direct, supervise, order, refer, enter into a practice protocol with, or delegate to such persons only those acts and functions which the responsible [physician] knows or has reason to believe such person is competent and authorized by law to perform;
 "(4) direct, supervise, order, refer, enter into a practice protocol with, or delegate to other persons only those acts and functions which are within the normal and customary specialty, competence and lawful practice of the responsible [physician];
 . . . .
 "(d) Nothing in subsection (a)(4) shall be construed to prohibit a [physician] from ordering, authorizing or directing anesthesia care by a registered nurse anesthetist pursuant to K.S.A. 65-1158 and amendments thereto."[13]
Subsection (a)(3) appears to require that a physician delegate onlyactivities which the physician believes the person is competent toperform and is authorized by law to perform.
 If "and" is interpreted in the conjunctive rather than the disjunctive"or", a physician cannot delegate to a CRNA the authority to orderpreoperative and postoperative medications and diagnostic tests becausethe CRNA is not authorized by law to do so.
 The legislative history of this statute demonstrates that thelegislation, introduced by the Kansas Medical Society, was centered onphysicians delegating medical activities to unlicensedindividuals.[14] The only reference to CRNAs was an amendment to thebill (codified at subsection [d]) which was designed to address theirconcerns because neither the Kansas Medical Society nor the KansasAssociation of Nurse Anesthetists wanted the bill "to complicate theunique practice arrangement which is governed by K.S.A.65-1158."[15]
 In short, the legislative history does not illuminate why the phrase"and authorized by law to perform" was included when the bill wasintended to allow physicians to delegate activities constituting thehealing arts to individuals who are not authorized by law to do so. Tofurther complicate matters, there are two Attorney General opinionsoffering conflicting interpretations ofsubsection (a)(3).[16]
 In Attorney General Opinion No. 2000-26, Attorney General Carla J.Stovall considered whether a physician could delegate to a person otherthan a CRNA the administration of an anesthetic medication. Concerningthe delegation provision in K.S.A. 2007 Supp. 65-28,127(a)(3), GeneralStovall reasoned:
 "A narrow reading of the phrase `authorized by law to perform' would preclude any delegation of any task that falls under the professional responsibility of a physician, except to another licensed professional when the task is within the professional responsibility of that other professional. A narrow reading would, therefore, preclude most delegation to unlicenced individuals, and many acts which are currently delegated to licensed or registered individuals. Most probably, that phrase refers back to the phrase `enter into a practice protocol with,' to prohibit a physician from entering into a practice protocol with an advanced registered nurse practitioner that would exceed that practitioner's normal scope of practice. If the Legislature meant to prohibit delegation of all tasks except when delegated to licensed or registered individuals in whose scopes of practice such duties are a part, it could have said it much more simply."
However, this office disagreed with General Stovall's opinion that"authorized by law" was limited to protocols. In Attorney GeneralOpinion No. 2008-6, the issue was whether a physician could delegate toa first responder the performance of medical procedures that extendedthe statutorily authorized activities for that attendant level. Theopinion concluded that "authorized by law" precluded a physician fromdelegating or ordering an act constituting the healing arts to a personwhom the law did not authorize:
 "Pursuant to [AG Opinion No. 2000-26], at the minimum it would be improper for a physician to enter a protocol authorizing attendants to perform procedures that fall outside the attendants' statutorily authorized activities. However, there does not appear to be any reason to limit the phrase `authorized by law to perform' only to practice protocols. The phrase `authorized by law to perform' refers back to `direct, supervise, order, refer, `accept responsibility for, enter into a practice protocol with, or delegate,' thus limiting a physician from directing, supervising, ordering, referring, accepting responsibility for entering into a practice protocol with, or delegating activities that would exceed an attendant's authorized scope of practice, i.e., the activities an attendant is authorized by law to perform."
If the conclusion in this recent Attorney General opinion were followed,a physician cannot delegate to a CRNA the authority to issuepreoperative and postoperative orders for medications and diagnostictests related to anesthesia or analgesia care because such activityexceeds the CRNA's statutory authority.
 In applying rules of statutory construction, Kansas appellate courtssometimes construe "and" to mean "or" and vice versa when necessary toreflect the intent of a statute.[17] The prior Attorney Generalopinions did not consider this statutory rule of construction in theiranalyses. While it could be applied here, we decline to do so because ofconcern regarding unintended consequences that may affect the healthcare community.
 Whether or not a physician can delegate acts that fall within theprovince of the healing arts to a CRNA is best resolved by thelegislature after consultation with health care providers. Accordingly,this office declines to answer your question whether a physician candelegate to a CRNA the authority to order preoperative and postoperativemedications and diagnostic tests related to anesthesia or analgesiacare. Because the answer to your final question — whether a CRNA candelegate to an RPN or LPN the administration of such orders — ispredicated on an affirmative answer to the physician-delegationquestion, your final question cannot be answered. Moreover, due to theconflict in the interpretation of the physician delegation statute,K.S.A. 2007 Supp. 65-28,127, the conclusions in Attorney GeneralOpinions No. 2000-26 and 2008-6 are withdrawn.
 Sincerely,
 Steve Six Attorney General
 Janet L. Arndt Assistant Attorney General
 SS:MF:JLA:jm
[1] See K.S.A. 65-1130, 65-1152, and K.A.R.60-11-102(b).
[2] L. 1996, Ch. 179, § 5.
[3] Minutes, Senate Committee on Public Health and Welfare, February14, 1995, Attachment 3-2.
[4] See Minutes, Senate Committee on Public Health and Welfare,February 22, 1995; February 8, 1996; and March 11, 1996.
[5] Minutes, Senate Committee on Public Health and Welfare, February8, 1996, Attachment 3.
[6] Id.
[7] Id., at Attachments 4 and 5. Additionally, the Nursing Board'srepresentative also testified the 1996 amendments required the physicianand CRNA to communicate about the anesthetic care plan prior to thesurgical procedure and such communication must be recorded in case ofdisciplinary proceedings. Id., at Attachment 1.
[8] K.S.A 65-1130(d) requires CRNAs to abide by the strictures inK.S.A. 65-1158.
[9] Emphasis added.
[10] K.S.A. 2007 Supp. 65-2802(a).
[11] K.S.A. 65-2803(a).
[12] K.S.A. 2007 Supp. 65-2872.
[13] Emphasis added.
[14] Minutes, Senate Committee on Public Health Welfare, February19, 1997.
[15] Id. Attachment 4.
[16] Attorney General Opinion No. 2008-6 and 2000-26. See alsoAttorney General Opinion No. 1995-84.
[17] State ex rel. Stephan v. Martin, 230 Kan. 747, 752-53(1982).